# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAROLYN MASCOW, | ) |
| | ) |
| and | ) |
| | ) Case No. 17-cv-6441 |
| LOCAL 571 OF ILLINOIS | ) |
| FEDERATION OF TEACHERS | ) Judge Sharon Johnson Coleman |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BOARD OF EDUCATION OF | ) |
| FRANKLIN PARK SCHOOL DISTRICT | ) |
| NO. 84, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Carolyn Mascow and Local 571 of the Illinois Federation of Teachers ("Plaintiffs") bring this claim against the Board of Education of Franklin Park District, No. 84 (or "the District"), David Katzin, and Heidy LaFleur ("Defendants") alleging First Amendment retaliation and a Due Process violation. Currently before the Court is the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, defendants' motion is granted.

**Background**

The following facts are undisputed unless otherwise noted. Mascow worked as a Special Education teacher for over 20 years. Local 571 is a teacher's union that represents teachers and school employees across the western suburbs of Chicago. David Katzin is the District's

1

Superintendent. Heidy LaFleur was employed as the Principal of North Elementary School, where Mascow worked.

The District participates in the Leyden Area Special Education Cooperative ("LASEC") with other school districts within Leyden Township. Certain students with behavioral and emotional difficulties in the District were assigned to a special education classroom under LASEC's Behavioral Intervention Program ("BIP").

Mascow taught a "self-contained" BIP class from the start of her employment with the District. In 2001, Mascow began teaching the BIP class at North Elementary School. Beginning in 2010, Mascow served as Co-President of Local 571. During her time in leadership, Mascow was involved in two union contact negotiations.

*Disagreements Between District and Union*

In July 2014, Principal LaFleur presented the idea of offering a Curriculum Night that would require teachers to stay 30 minutes past their usual schedule. Mascow told LaFleur that she believed the Curriculum Night would violate the union's contract and proposed that the curriculum presentation coincide with an already-scheduled open house. Although she expressed disappointment on Mascow's position, LaFleur accepted the suggestion and held the Curriculum Night during a scheduled open house.

Over the summer of 2015, Mascow learned of a staff assembly scheduled to be conducted by motivational speaker Jim "Basketball" Jones. In addition to the assemblies organized for parents and students, Jones was scheduled to conduct a presentation for teachers that would exceed the time of a normal staff meeting. On September 2, 2015, Superintendent Katzin met with Mascow and union Co-President Kara Yaussy. Mascow and Yaussy informed Katzin that the union objected to the staff presentation because it would run past their usual time and proposed to either move the

2

presentation date, or pay the teachers for the additional time. Katzin decided to cancel the staff meeting and alerted teachers and staff via e-mail on September 9, 2015.

*Mascow's Employment History*

*2014-2015 School Year*

Shortly after the beginning of the 2014-2015 school year, Mascow was assigned to a "resource" position in lieu of her normal BIP classroom. In this position, Mascow worked with students in general education classrooms as well as students with individual early intervention plans ("IEPs").

During the 2015 evaluation meeting with Mascow, LaFleur rated Mascow in four categories: planning and preparation, classroom environment, instruction, and professional responsibility. Mascow was rated "excellent" in planning and preparation and classroom environment, and "proficient" in instruction and professional responsibility, finishing with a general rating of "proficient." LaFleur told Mascow that the time Mascow spent on union activities may have been preventing her from having time to participate in professional development activities such as presentations and attending conferences that would warrant an "excellent" rating in the "professional responsibilities" domain. However, LaFleur included Mascow's leadership within the union as a positive aspect in her performance in a separate component of the evaluation. LaFleur allowed Mascow to submit additional information in support of Mascow's request to increase her rating. After considering the evidence provided by Mascow, LaFleur increased Mascow's rating in one of the categories.

*2015-2016 School Year*

After Mascow was assigned to a classroom for the 2015-2016 year, LaFleur received a complaint from Rosario Vazzano, a classroom aide assigned to work with Mascow. After meeting with Vazzano on September 2, 2015, LaFleur was informed that Mascow spoke to Vazzano

disrespectfully on several occasions[1]. Mascow denied that she disrespected Vazzano during a meeting with LaFleur. On September 14, 2015, LaFleur sent a letter to Mascow summarizing their conversation and reminding Mascow to treat classroom aides respectfully. After reassigning Vazzano to a different classroom, LaFleur assigned Anna Ossowska as an aide to Mascow. When Ossowska complained about being uncomfortable working with Mascow, LaFleur moved Ossowska back to her prior class. Next, Carmen Romero was assigned to work with Mascow. LaFleur received similar complaints about Mascow from Romero.

Superintendent Katzin and Principal LaFleur met with Mascow and a union representative on November 3, 2015. During the meeting, LaFleur gave Mascow a chance to respond to the complaints about her. Mascow denied treating any of the aides inappropriately. On November 10, 2015, Katzin issued a "Formal Reprimand and Notice of Warning" memo, which referenced the complaints made by the classroom aides and summarized the meeting held on November 3, 2015. The letter included the following:

> Your conduct, as described in Ms. LaFleur's September 10, 2015 letter, the May 16, 2008 memorandum from David Nemec, and during our meeting on November 3, 2015, is not consistent with a professional who is able to communicate and problem-solve with others in a collegial and respectful manner. You are hereby directed to refrain from engaging in any behavior that can be reasonably construed as overly harsh, demeaning or condescending towards your colleagues.
>
> Failure to heed this directive at any point for the duration of your employment with District 84 will likely result in a recommendation to our Board of Education that it issue a Notice to Remedy, with consideration also given to a recommendation for the termination of your employment. I cannot stress enough the seriousness of your behaviors as well as that of the potential consequences should you fail to remediate them.

LaFleur allowed Mascow to participate in the interview process to find the next classroom aide and was given assistance to foster better working relationships with her classroom aide.

---

[1] It is undisputed that August 11, 2015 was the first day of school for the 2015-2016 year.

During an assembly held on January 7, 2016, LaFleur observed Mascow with pen and paper appearing to grade papers. Shortly thereafter, Mascow stepped out of the assembly, leaving her students with the classroom aide, and returned one hour later. When LaFleur sought an explanation, Mascow explained that she was grading tests and left the assembly to teach a class.

During the 2015-2016 school year, Mascow struggled with managing classroom behavior. The District asserts that Mascow did not employ classroom practices that were best for de-escalating disruptions from students with disabilities. Mascow disputes this claim. After being informed about Mascow's frequent tardiness during the school year, LaFleur and Katzin met with Mascow who explained that her tardiness was due to insomnia. Katzin issued another Formal Reprimand and Notice of Warning to Mascow on May 20, 2016.

*2016-2017 School Year*

Katzin assigned Mascow to teach the self-contained classroom and Amy D' Antonio to work in the resource position for the 2016-2017 school year. Beginning in the summer of 2016, Mascow became seriously ill and required time off work. Mascow was allowed to take leave under the Family and Medical Leave Act from August 12, 2016 until September 12, 2016. When she returned to work, Mascow worked half days until September 22, 2016. The District implemented tools in Mascow's classroom aimed at encouraging student success such as: individualized task organizers and work stations, visual learning aides, and schedules for each student.

The District contends that Mascow had difficulty managing classroom behavior upon her return to full time. Specifically, the District asserts that Mascow failed to use the student classroom tools that were executed by the school and even used an improper restraint on a student. Mascow disputes this. According to the District, Mascow required assistance from outside the classroom on at least eight occasions.

Nevertheless, LaFleur decided that Mascow should be reassigned back to the resource position on October 13, 2016. D'Antonio was assigned to Mascow's self-contained classroom. The District claims the classroom showed dramatic improvement upon D'Antonio's return. Although Mascow concedes that she struggled to manage behavioral issues while she was teaching the self-contained classroom, she contends that she was making progress by the time she was removed.

On November 14, 2016, Mascow was suspended for two days without pay. In the memo issued to Mascow, Katzin noted continued tardiness by Mascow, including an occasion when Mascow was dishonest about the reason she was late. The memo also highlighted further mistreatment of classroom aides. Katzin recommended that the Board of Education issue a Notice of Remedy to Mascow.

Following Mascow's reassignment, LaFleur met with Mascow about her performance. LaFleur and Mascow discussed Mascow's lack of student documentation, not being prepared for meetings with parents, issues after classroom observations, and other responsibilities Mascow was not handling. Mascow denies that she had any issues following her reassignment.

In February 2017, LaFleur prepared an evaluation summary for Mascow for the 2015-2016 and 2016-2017 school years. According to Superintendent Katzin's recommendation, the evaluation should be completed early enough in the school year for the remediation plan to be implemented. Mascow received the ratings of "Needs Improvement" in Domain I, Planning and Preparation, and Domain II, Classroom Environment. She received "Unsatisfactory" in Doman III, Instruction, and Domain IV, Professional Responsibilities, with an overall rating of "Unsatisfactory." The evaluation meeting between LaFleur and Mascow focused on Mascow's performance after returning from FMLA leave. Among other matters, LaFleur stated that Mascow's teaching approach did not connect to higher-level learning objectives.

At the beginning of 2016-2017, the District anticipated that it would have to eliminate a special education teacher position due to a reduction in force. According to District rules, because Mascow fell into the lowest rated group among special education teachers, she was required to be subject to the layoff. The Board of Education issued a written notice of Mascow's layoff on March 15, 2017. Because her rating was "Unsatisfactory," Mascow had no "recall" rights to appeal the decision. Mascow then brought this action alleging First Amendment retaliation.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and if done, judgment as a matter of law should be granted in its favor. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**Discussion**

In First Amendment retaliation claims, the burden is "split between the parties" at the summary judgment stage. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) (internal citation omitted). Initially, the plaintiff must show sufficient evidence that the protected activity was "at least a motivating factor" in the employer's adverse action against the plaintiff. *See id.* Put differently, to establish a *prima facie* case, the plaintiff must demonstrate a "causal link" between the activity and the unlawful retaliation. *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013) This can be accomplished by showing evidence of suspicious timing, ambiguous statements, behavior or

7

comments directed at others in the protected group, or better treatment of individuals outside of the protected group. *Kidwell*, 679 F.3d at 966; *Hobgood*, 731 F.3d at 644. Still, Courts must look to the evidence as a whole to determine whether the plaintiff has shown that a reasonable jury could find that she was subjected to unlawful retaliation. *Hobgood*, 731 F.3d at 643.

If the plaintiff establishes a *prima facie* case of unlawful retaliation, the burden then shifts to the employer to rebut this claim, by showing that the adverse employment action would have occurred regardless of the protected activity. *Kidwell*, 679 F.3d at 965; *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If the employer rebuts the inference of retaliatory motive, the plaintiff must demonstrate that the employer's purported reason for the adverse action is pretext, or "a dishonest explanation." *Kidwell*, F.3d at 969 (citing *Kulumani v. Blue Cross Blue Shield Ass'n*, 223 F.3d 681, 685 (7th Cir. 2000)).

Plaintiffs contend that the District retaliated against Mascow in several ways: first, for opposing the Curriculum Night as suggested by LaFleur in July 2014 and second, for objecting to the staff presentation by James "Basketball" Jones over the summer of 2015. Plaintiffs argue that Mascow being assigned the new position as a resource teacher at the beginning of the 2014-2015 school year and receiving a rating of "proficient" instead of "excellent" in May 2015 are evidences of retaliatory intent. Plaintiffs also argue that retaliatory actions took place following Mascow's opposition of the staff assembly with James Jones during the fall of 2015. The plaintiffs assert that on the same day Katzin e-mailed the District's teachers cancelling the staff assembly, she met Mascow concerning complaints from Vazzano, Mascow's classroom aide. Further, plaintiffs point to the memo issued to Mascow, which included eight-year old allegations from a former classroom aide.

The Court finds that there is not sufficient evidence for a reasonable jury to infer retaliatory motive from any of the defendants' actions. As an initial matter, while plaintiffs point to being

8

assigned the resource role in the fall of 2014 after Mascow's objection of the Curriculum Night, plaintiffs have not explained how this change was an adverse employment action. The evidence does not show, and plaintiffs do not argue, that the resource teacher position included a lower salary, or another material alteration to the terms of her employment. *See Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). This is especially apparent when Mascow sought to stay in the resource position during the 2016-2017 school year. Indeed, this applies to the written memorandum Katzin issued to Mascow following the complaints from her classroom aides. *Id.* at 955 (stating that "reprimands without material consequences" generally are not adverse employment actions).

Even LaFleur meeting with Mascow the same day LaFleur e-mailed the District of the staff assembly cancellation (September 9) does not evidence retaliatory intent. It is undisputed that Vazzano met with LaFleur about issues with Mascow on September 2, 2015 and provided examples of Mascow's misconduct on September 4, 2015. LaFleur requested the meeting with Mascow on September 7, 2015. This timeline demonstrates that the September 9, 2015 meeting was not random.

Plaintiffs also assert that Mascow's disagreements led to the Unsatisfactory rating during the 2017 evaluation. However, the lengthy amount of time between the disagreements and the 2017 evaluation undermines an inference of retaliatory conduct. While no bright line rule exists for what constitutes suspicious timing, the Seventh Circuit has made clear that the timing between the protected activity and adverse employment action must be "very close." *See Kidwell*, 679 F.3d at 966-67 (finding that five weeks between the protected activity and purported retaliatory action militated against an inference of causation) (internal citation omitted).

Most importantly, significant intervening facts occurred regarding Mascow's performance between the disagreements and the 2017 evaluation, including complaints from classroom aides, difficulty in classroom management, and dishonesty concerning tardiness. As such, even if plaintiffs

9

were able to establish a *prima facie* case, the evidence regarding Mascow's performance sufficiently rebuts any inference of retaliatory conduct. Moreover, the plaintiffs provide no evidence that other union leaders received any purported mistreatment from the District. *See Hobgood*, 731 F.3d at 644.

**Conclusion**

When construing the evidence in a light most favorable to the plaintiffs, the Court does not find that sufficient evidence has been presented to infer retaliatory action from the District. Accordingly, the defendants' motion [49] for summary judgment is granted. Plaintiffs' complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 7/18/2019

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge